**WEIL, GOTSHAL & MANGES LLP**
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Jacqueline Marcus
Jared R. Friedmann
Jennifer Brooks Crozier

*Attorneys for Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x

| | | |
|---|---|---|
| In re | : | **Chapter 11** |
| | : | |
| **SEARS HOLDINGS CORPORATION,** *et al.*, | : | **Case No. 18-23538 (RDD)** |
| Debtors.[1] | : | **(Jointly Administered)** |

---------------------------------------------------------------x

| | | |
|---|---|---|
| **SEARS HOLDINGS CORPORATION,** *et al.*, | : | |
| | : | |
| **Plaintiffs,** | : | |
| v. | : | **Adv. Proc. No. 21-07011 (RDD)** |
| | : | |
| **1055 HANOVER, LLC and 1 IMESON PARK** | : | |
| **BLVD, LLC,** | : | |
| Defendants. | : | |

---------------------------------------------------------------x

## DEBTORS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: Sears Holdings Corporation (0798); Kmart Holding Corporation (3116); Kmart Operations LLC (6546); Sears Operations LLC (4331); Sears, Roebuck and Co. (0680); ServiceLive Inc. (6774); SHC Licensed Business LLC (3718); A&E Factory Service, LLC (6695); A&E Home Delivery, LLC (0205); A&E Lawn & Garden, LLC (5028); A&E Signature Service, LLC (0204); FBA Holdings Inc. (6537); Innovel Solutions, Inc. (7180); Kmart Corporation (9500); MaxServ, Inc. (7626); Private Brands, Ltd. (4022); Sears Development Co. (6028); Sears Holdings Management Corporation (2148); Sears Home & Business Franchises, Inc. (6742); Sears Home Improvement Products, Inc. (8591); Sears Insurance Services, L.L.C. (7182); Sears Procurement Services, Inc. (2859); Sears Protection Company (1250); Sears Protection Company (PR) Inc. (4861); Sears Roebuck Acceptance Corp. (0535); SR – Rover de Puerto Rico, LLC (f/k/a Sears, Roebuck de Puerto Rico, Inc.) (3626); SYW Relay LLC (1870); Wally Labs LLC (None); SHC Promotions LLC (9626); Big Beaver of Florida Development, LLC (None); California Builder Appliances, Inc. (6327); Florida Builder Appliances, Inc. (9133); KBL Holding Inc. (1295); KLC, Inc. (0839); Kmart of Michigan, Inc. (1696); Kmart of Washington LLC (8898); Kmart Stores of Illinois LLC (8897); Kmart Stores of Texas LLC (8915); MyGofer LLC (5531); Rover Brands Business Unit, LLC (f/k/a Sears Brands Business Unit Corporation) (4658); Sears Holdings Publishing Company, LLC. (5554); Sears Protection Company (Florida), L.L.C. (4239); SHC Desert Springs, LLC (None); SOE, Inc. (9616); StarWest, LLC (5379); STI Merchandising, Inc. (0188); Troy Coolidge No. 13, LLC (None); BlueLight.com, Inc. (7034); Sears Brands, L.L.C. (4664); Sears Buying Services, Inc. (6533); Kmart.com LLC (9022); Sears Brands Management Corporation (5365); and SRe Holding Corporation (4816). The location of the Debtors' corporate headquarters is 1700 Broadway, 19th Fl., New York, NY 10019.

# TABLE OF CONTENTS

I.      PRELIMINARY STATEMENT ...................................................................... 1

II.     FACTUAL BACKGROUND ......................................................................... 3

III.    LEGAL STANDARD .................................................................................. 4

IV.     ARGUMENT AND AUTHORITIES .............................................................. 5

        A.      The Debtors Have Stated a Claim for Turnover. .................................... 6

        B.      The Unused Prepaid Rent Amounts Are Property of the Debtors' Estates;
                By Refusing to Turn Over Such Amounts, Defendants Improperly Attempt
                an End Run Around the Bankruptcy Code's Priority Scheme............................. 7

        C.      The Arguments Set Forth In Defendants' Motion to Dismiss Are
                Meritless.................................................................................... 9

                1.      The Unused Prepaid Rent Amounts Remained Property of the
                        Estates Because, under the Leases, Prepaid Rent Was Only Earned
                        by Defendants "As and When Due" and the Unused Prepaid Rent
                        Amounts Never Became Due.................................................... 10

                        a.      Debtors Are Entitled to A Return of the Prepaid Rent
                                Under the Leases......................................................... 10

                        b.      State Law Does Not Provide That the Unused Prepaid
                                Rent Amounts Were Earned Upon Receipt by Defendants;
                                Further, the Parties Contracted Around State Law. .................... 13

                2.      Defendants Are Not Entitled to Setoff Here Where the Debts Are
                        Not Mutual. .......................................................................... 16

V.      CONCLUSION ......................................................................................... 18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009) .................................................................................................5

*In re Avianca Holdings S.A.*,
 618 B.R. 684 (Bankr. S.D.N.Y. 2020) ...................................................................11

*Bell Atl. Corp. v. Twombly*,
 550 U.S. 544 (2007) .................................................................................................4

*Burns Trading Co. v. Welborn*,
 81 F.2d 691 (10th Cir. 1936) .................................................................................15

*Casino Amusement Co. v. Ocean Beach Amusement Co.*,
 101 Fla. 59 (Fla. 1931) ..........................................................................................14

*Chauvenet v. Person*,
 217 Pa. 464 (Pa. 1907) ...........................................................................................14

*Deal v. Children's Hosp. of Phila.*,
 223 A.3d 705 (Pa. Super. Ct. 2019) .......................................................................13

*DeFlora Lake Dev. Assocs v. Hyde Park (In re DeFlora Lake Dev. Assocs.)*,
 571 B.R. 587 (Bankr. S.D.N.Y 2017) ......................................................................4

*In re Dennison*,
 84 B.R. 846 (Bankr. S.D. Fla. 1988) ........................................................................7

*In re Enron Corp.*,
 No. 01 B 16034 (AJG), 2005 Bankr. LEXIS 3475 (Bankr. S.D.N.Y. Sept. 26,
 2005) ........................................................................................................................11

*Finkelstein v. Se. Bank, N.A.*,
 490 So. 2d 976 (Fla. 4th Dist. Ct. App. 1986) .......................................................10

*First D.M.V., Inc. v. Amster*,
 545 So. 2d 936 (Fla. 3d Dist. Ct. App. 1989) ........................................................14

*Geron v. Peebler (In re Pali Holdings, Inc.)*,
 488 B.R. 841 (Bankr. S.D.N.Y. 2013) .....................................................................6

*Gustine Uniontown Assocs., Ltd. ex rel. Gustine Uniontown, Inc. v. Anthony
 Crane Rental, Inc.*,
 892 A.2d 830 (Pa. Super. Ct. 2006) .......................................................................13

*Hassett v. BancOhio Nat'l Bank (In re CIS Corp.),*
    172 B.R. 748 (Bankr. S.D.N.Y. 1994) ................................................................6

*Haynes v. Chase Bank USA, N.A. (In re Haynes),*
    No. 11-23212 (RDD), 2014 Bankr. LEXIS 3111 (Bankr. S.D.N.Y. July 22,
    2014) ...................................................................................................................5

*Housholder v. Black,*
    62 So. 2d 50 (Fl. 1953) ................................................................................13, 14

*In re Johnson,*
    371 B.R. 380 (Bankr. E.D. Ark. 2007) .............................................................7

*Kramer v. Mahia (In re Khan),*
    No. 10-46901-ESS, 2014 WL 10474969 (E.D.N.Y. Dec. 24, 2014) ...................6

*In re Loeb Estate,*
    400 Pa. 368 (Pa. 1960) ....................................................................................10

*Loew v. Antonick,*
    82 Ariz. 204 (Ariz. 1956) .................................................................................15

*LTV Steel Co., Inc. v. David Graham Co. (In re Chateaugay Corp.),*
    78 B.R. 713 .......................................................................................................7

*Luria v. Robbins,*
    223 Pa. Super. 456 (1973) ...............................................................................14

*Marshall v. Shipman Elevator Co. (In re Marshall),*
    240 B.R. 302 (Bankr. S.D. Ill. 1999) .........................................................7, 8, 16

*Maryland Nat'l Bank v. United States,*
    227 F. Supp. 504 (D. Md. 1964) .......................................................................14

*Mission Prod. Holdings v. Tempnology, LLC,*
    139 S. Ct. 1652 (2019) ..................................................................................8, 11

*In re Orangebrook Concessions, Inc.,*
    47 B.R. 858 (Bankr. S.D. Fla. 1985) ........................................................7, 8, 10, 17

*Paul v. Kanter,*
    172 So. 2d 26 (Fla. 1965) .................................................................................14

*Penthouse Media Gr. V. Guccione (In re General Media, Inc.),*
    335 B.R. 66 (Bankr. S.D.N.Y. 2005) ................................................................6

*Partrick & Wilkins Co. v. Reliance Ins. Co.,*
    500 Pa. 399 (Pa. 1983) ....................................................................................10

*In re Riviera Club, Inc.*,
    280 F. Supp. 741 (W.D. Mo. 1967) ......................................................................15

*Scherling v. Hellman Elec. Corp. (In re Westchester Structures)*,
    181 B.R. 730 (Bankr. S.D.N.Y. 1995) .................................................................16

*Shugrue v. Fischer (In re Ionosphere Clubs, Inc.)*,
    164 B.R. 839 (Bankr. S.D.N.Y. 1994) .................................................................16

*Stoltz v. Brattleboro Hous. Auth. (In re Stoltz)*,
    315 F.3d 80 (2d Cir. 2002) ....................................................................................5

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007) ................................................................................................5

*U.S. v. Whiting Pools, Inc.*,
    462 U.S. 198 (1983) . Bankruptcy ..........................................................................7

*Windstream Holdings, Inc. v. Charter Commc'ns Inc. (In re Windstream
    Holdings, Inc.)*,
    No. 19-22312 (RDD), 2021 Bankr. LEXIS 926 (Bankr. S.D.N.Y. Apr. 8,
    2021) (Drain, J.) .....................................................................................................8

*Young v. Cobbs*,
    83 So. 2d 417 (Fla. 1955) .....................................................................................15

*Zaconick v. McKee*,
    310 F.2d 12 (5th Cir. 1962) ..................................................................................14

**Statutes**

11 U.S.C. §  362(a)(3) ......................................................................................................8

11 U.S.C. § 363 ................................................................................................................6

11 U.S.C. §  365(d)(3) ....................................................................................................11

11 U.S.C. §  365(g) ...........................................................................................................9

11 U.S.C. § 507 .................................................................................................................1

11 U.S.C. § 541(a)(1) ........................................................................................................7

11 U.S.C. § 542 ................................................................................................................8

11 U.S.C. § 542(a) ..........................................................................................................18

11 U.S.C. § 543 ................................................................................................................8

**Other Authorities**

3 Collier on Bankruptcy ¶ 365.03 (16th ed. 2021) ........................................................................11

5 Collier on Bankruptcy ¶ 553.03 (16th ed. 2021) ........................................................................17

BLACK'S LAW DICTIONARY (11th ed. 2019) ................................................................................10

Fed. R. Civ. P. 12(b)(6).....................................................................................................................4

Treister, et al., *Fundamentals of Bankruptcy Law*, § 5.04(f), at 249 (7th ed. 2004,
    Richard Levin ed.) ....................................................................................................................11

Plaintiffs Sears Holding Corporation and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**"), filed this adversary proceeding for turnover of the Unused Prepaid Rent Amounts (as defined below) against 1055 Hanover, LLC ("**Hanover Landlord**") and 1 Imeson Park Blvd, LLC ("**Imeson Park Landlord**") (collectively, "**Defendants**" and, together with the Debtors, the "**Parties**"). *See* Adversary Complaint [ECF No. 1] (the "**Complaint**"). Defendants filed a Motion to Dismiss (the "**Motion**") on March 29, 2021. [ECF Nos. 4-1, 4-2] The Debtors oppose the Motion and respectfully state as follows:

## I.  PRELIMINARY STATEMENT

1.     Defendants have sought to circumvent the Bankruptcy Code's priority scheme by retaining the Unused Prepaid Rent Amounts. This attempted end run prejudices the estates' other creditors and also is at odds with the Bankruptcy Code, which requires that claims with a higher priority be paid in full before claims with a lower priority are paid and that, within each class, creditors share the available funds in proportion to the size of their claims. *See* 11 U.S.C. § 507.

2.     Defendants advance several baseless arguments that ignore the unambiguous language of the Leases (as defined below) negotiated and executed by the Parties. As an initial matter, the Leases provide that, in the ordinary course, Defendants were only to apply Prepaid Rent (as defined in the Leases) to the Debtors' rent obligations "as and when due." Accordingly, under the express terms of the Leases, although Defendants held the Prepaid Rent, they only took title to a set amount of that rent each month when it became due. Title to the remainder (the Unused Prepaid Rent Amounts) stayed with the Debtors until it became due.

3.     Because the Debtors' rejection of the Leases operated as a termination of the Debtors' future obligations under the Leases—including but not limited to any obligation to

pay rent for the post-rejection period—the Unused Prepaid Rent Amounts never became due, and

title to the Unused Prepaid Rent Amounts never passed from the Debtors to Defendants.

Defendants' repeated refrain that rent paid in advance is "earned upon receipt" is of no avail:  it is

not the law in either Florida or Pennsylvania and, more importantly, it is inconsistent with the

terms of these Leases.

4.    It also is well-settled that Defendants may not set off the Unused Prepaid

Rent Amounts against any alleged amounts owed to them because setoff requires mutual,

counterbalancing debts, and the Unused Prepaid Rent Amounts are not a "debt" owed to the

Debtors.  Rather, the Unused Prepaid Rent Amounts represent money belonging to the Debtors

that has been held, effectively in trust, by Defendants.  Even assuming the Unused Prepaid Rent

Amounts were a "debt" for purposes of a mutuality analysis, mutuality does not exist because the

Debtors' claim to the Unused Prepaid Rent Amounts arose post-petition—when they rejected the

Leases and terminated their future payment obligations—and Defendants' rejection damages are,

as a matter of law, a pre-petition claim.

5.    Although Defendants also asserted post-petition administrative claims, the

amounts associated with those claims are *de minimis*.  Defendants' administrative claims, which

at best total about $144,000, do not bar the Debtors from seeking turnover of the approximately

$3.1 million in Unused Prepaid Rent Amounts that Defendants are improperly holding.

6.    At bottom, the Unused Prepaid Rent Amounts are subject to turnover

because at all times they remained property of the Debtors' estates.  Indulging Defendants' attempt

to keep the Unused Prepaid Rent Amounts would afford them an inequitable windfall at the

expense of the estates' other creditors.

## II.   FACTUAL BACKGROUND

7.      As set forth in the Complaint, on April 5, 2018, the Debtors entered into two separate lease agreements for properties located at 1055 Hanover Street, Wilkes Barre, Pennsylvania and 1 Imeson Park Boulevard, Jacksonville, Florida (the "**Leases**").  Compl. ¶ 13. Pursuant to the Leases, the Debtors transferred Prepaid Rent to both Defendants.  *Id.* ¶ 14. Defendants were to hold the Prepaid Rent—effectively in trust—until they applied the amounts toward "Monthly Fixed Rent" for each property, "as and when due," for the period from November 2018 through October 2019, which would be months seven through eighteen of the Leases.  *Id.* ¶¶ 14, 21–22; Ex. 1 (Hanover Lease) § 36; Ex. 2 (Imeson Park Lease) § 36.

8.      On October 15, 2018 (the "**Commencement Date**"), the Debtors commenced these chapter 11 cases and, on April 30, 2019, the Debtors rejected both of the Leases. ECF No. 3449 at 6; Compl. ¶¶ 16–17.  At the time the Debtors rejected the Leases, the Monthly Fixed Rent for months thirteen through eighteen of the Leases had not yet accrued.  Compl. ¶ 18. Because the Debtors rejected the Leases, the obligation to pay the Monthly Fixed Rent going forward was terminated.  *Id.* ¶ 17.  The amounts wrongfully retained by Defendants total $3,098,034.00 (the "**Unused Prepaid Rent Amounts**").

9.      The Leases both state:

> On the Effective Date, Sears shall provide Landlord with an amount equal to $3,720,035.10[2] (i.e., twelve (12) months of Monthly Fixed Rent otherwise due during months seven (7) through eighteen (18) of the Term) (the "**Prepaid Rent**"), as prepaid rent due under this Lease for months seven (7) through eighteen (18) of the Term.  Provided Sears is not then in default under this Lease beyond any applicable notice or cure period, Landlord shall apply the Prepaid Rent to Sears' obligation to pay Monthly Fixed Rent *as and when due* until the entire amount of the Prepaid Rent has been exhausted . . . .

---

[2] The Imeson Park Lease provides the same language except that the Debtors' prepaid an amount equal to $2,385,798.90.  Compl. Ex. 2 (Imeson Park Lease) § 36.

*Id.* ¶ 22; Ex. 1 (Hanover Lease) § 36 (emphasis added); Ex. 2 (Imeson Park Lease) § 36 (emphasis added).  In short, the Leases make clear that, in the ordinary course (i.e., if Sears is not in default), "the Landlord[s] shall apply the Prepaid Rent . . . as and when due[.]"  Accordingly, in the ordinary course, title to the Prepaid Rent did not pass to Defendants until it was due.  Compl. ¶ 14.

10.     The Leases further provide that "Sears shall be deemed to have delivered a Sears Termination Notice as of . . . the date of Sears' default."  Compl. Ex. 1 (Hanover Lease) § 10(v); Compl. Ex. 2 (Imeson Park Lease) § 10(v).  The Leases also explicitly state that Defendants are to return unused amounts of the Monthly Fixed Rent:  "If the Termination Date occurs on any day other than the last day of a calendar month, Sears will be entitled to a refund in an amount equal to Monthly Fixed Rent and Additional Rent therefore paid under this lease allocable on a per-diem basis."  Compl. Ex. 1 (Hanover Lease) § 4(e); Compl. Ex. 2 (Imeson Park Lease) § 4(e).

11.     On August 28, 2020 and again on October 15, 2020, the Debtors contacted Defendants to recover the Unused Prepaid Rent Amounts, but Defendants rejected the Debtors' demands.  In addition to refusing to turn over the Unused Prepaid Rent Amounts, Defendants have asserted that the Debtors owe them money.  Compl. ¶ 24.  Defendants have asserted, among other things, administrative expense claims for amounts incurred between the Commencement Date and the rejection of the Leases.  *Id.*

## III.   <u>LEGAL STANDARD</u>

12.     To survive a Rule 12(b)(6) motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also DeFlora Lake Dev. Assocs. v. Hyde Park (In re DeFlora Lake Dev. Assocs.)*, 571 B.R. 587, 594, 600 (Bankr. S.D.N.Y 2017) (denying, pursuant to *Twombly*, defendant's motion to dismiss plaintiff-debtor's adversary complaint where debtor sufficiently

alleged a claim for turnover).  "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The plausibility standard is "not akin to a 'probability requirement,' . . . [but] asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.* (citation omitted).  The court must accept "the complaint's factual allegations as true . . . and must draw all reasonable inferences in favor of the plaintiff."  *See Haynes v. Chase Bank USA, N.A. (In re Haynes)*, No. 11-23212 (RDD), 2014 Bankr. LEXIS 3111, at *2 (Bankr. S.D.N.Y. July 22, 2014) (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 321–23 (2007)).

## IV.   <u>ARGUMENT AND AUTHORITIES</u>

13.    The Debtors are entitled to turnover of the Unused Prepaid Rent Amounts.  Defendants held the Prepaid Rent effectively in trust until the month it was to be applied.  Because the Debtors' rejection of the Leases operated as a termination of the Debtors' obligations to pay post-petition rent under the Leases, Defendants' right to apply the Prepaid Rent to months thirteen through eighteen of the lease periods never accrued.  Accordingly, title to the Unused Prepaid Rent Amounts never passed to Defendants.  Defendants' arguments to the contrary are meritless and not supported by the case law they cite.  By retaining the Unused Prepaid Rent Amounts, Defendants are impermissibly and unilaterally increasing the amount to be recovered on their unsecured pre-petition rejection damage claims to the detriment of the estates' other creditors.[3]

---

[3] Contrary to Defendants' assertions, Motion ¶ 14 n.4, the Complaint does not raise standing or jurisdictional issues.  First, Defendants' reading of *In re Stoltz* is misleading.  The excerpt from the case that Defendants reproduce merely explains that rejection is not termination.  *Stoltz v. Brattleboro Hous. Auth. (In re Stoltz)*, 315 F.3d 80, 85 n.1 (2d Cir. 2002).  The case says nothing about whether prepaid rent is property of the estate.  Second, Defendants cite cases that are factually distinguishable.  *See, e.g.*, *Penthouse Media Gr. V. Guccione (In re General Media, Inc.)*, 335 B.R. 66, 75 (Bankr. S.D.N.Y. 2005) (finding turnover inappropriate where "none of the proceeds . . . w[ould] be paid by the plaintiff to the unsecured creditors" and "any recovery [would] inure solely to the benefit of the plaintiff").  As *General*

A.    **The Debtors Have Stated a Claim for Turnover.**

14.    To state a claim for turnover of estate property, a plaintiff must allege that:

"(1) the property is in the possession, custody or control of another entity; (2) the property can be

used in accordance with the provisions of [11 U.S.C. §] 363; and (3) the property has more than

inconsequential value to the debtor's estate." *Kramer v. Mahia (In re Khan)*, No. 10-46901-ESS,

2014 WL 10474969, at *26 (E.D.N.Y. Dec. 24, 2014). "A turnover action's essence is in bringing

the estate's property into its custody" by invoking "the court's most basic equitable powers to

gather and manage property of the estate." *Geron v. Peebler (In re Pali Holdings, Inc.)*, 488 B.R.

841, 851 (Bankr. S.D.N.Y. 2013).

15.    The Debtors are entitled to turnover of the Unused Prepaid Rent Amounts

because there is no dispute that:  (1) the Unused Prepaid Rent Amounts are in the possession of

Defendants (i.e., an entity other than the estate); (2) the Unused Prepaid Rent Amounts can be used

in accordance with the provisions of 11 U.S.C. § 363; and (3) the property has consequential value

to the Debtors' estates. *See generally* Motion; *see also* Compl. ¶¶ 14–19, 28–30. Further, contrary

to Defendants' arguments, there is also no legitimate dispute as to which entity holds title to the

Unused Prepaid Rent Amounts.[4]

---

*Media* makes clear, the relevant question regarding the Bankruptcy Court's jurisdiction is whether the
recovery will go to the creditors or the debtor. *Id.* ("Bankruptcy courts plainly lack subject matter
jurisdiction over post-confirmation litigation where the case has been fully administered and all of the
recovery will go to the reorganized debtor rather than to the creditors."). Here, the *Modified Second
Amended Joint Chapter 11 Plan of Sears Holdings Corporation and Its Affiliated Debtors* [ECF No. 5370]
(the "**Plan**") has not gone effective or been fully administered and recovery will go to creditors. Thus, a
turnover proceeding is appropriate.

[4] Defendants cite *Hassett v. BancOhio Nat'l Bank (In re CIS Corp.)*, 172 B.R. 748 (Bankr. S.D.N.Y. 1994),
in favor of dismissal.  As an initial matter, the court in *Hassett* refused to dismiss the plaintiff's turnover
claims at the motion to dismiss stage because "[j]udicial efficiency and uniformity [would] be promoted by
allowing the bankruptcy court, already familiar with the underlying action, to manage the proceedings."
*Hassett*, 172 B.R. at 764.  The court held it could adjudicate the claims up until trial, but that it could not
see the claim to a final resolution because title to the subject property was in dispute. *Id.* at 759–60.  Here,
there is no legitimate dispute over the property in dispute because the plain language of the Leases states

**B.      The Unused Prepaid Rent Amounts Are Property of the Debtors' Estates; By Refusing to Turn Over Such Amounts, Defendants Improperly Attempt an End Run Around the Bankruptcy Code's Priority Scheme.**

16.      The Bankruptcy Code defines "property of the estate" as "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1); *see also U.S. v. Whiting Pools, Inc.*, 462 U.S. 198, 204–05 (1983) (discussing Congress's intent to define estate property in the broadest possible sense). Bankruptcy courts have consistently held that prepayments, like the Unused Prepaid Rent Amounts, are property of a debtor's estate. *See Marshall v. Shipman Elevator Co. (In re Marshall)*, 240 B.R. 302, 304–05 (Bankr. S.D. Ill. 1999) (holding that prepaid storage charges paid prior to bankruptcy filing were property of the debtors' estates); *In re Orangebrook Concessions, Inc.*, 47 B.R. 858, 859 (Bankr. S.D. Fla. 1985) (holding that a tenant's prepaid rent paid prior to bankruptcy filing was property of the debtor's estate); *see also In re Johnson*, 371 B.R. 380, 386 (Bankr. E.D. Ark. 2007) (holding that prepaid private-school tuition paid prior to bankruptcy filing was property of the debtors' estates); *In re Dennison*, 84 B.R. 846, 847 (Bankr. S.D. Fla. 1988) (holding that prepaid insurance premiums paid prior to bankruptcy filing, although exempt, were property of the debtor's estate); *LTV Steel Co., Inc. v. David Graham Co. (In re Chateaugay Corp.)*, 78 B.R. 713, 725–26 (Bankr. S.D.N.Y. 1987 (holding that prepaid freight charges paid prior to bankruptcy filing were property of the debtor's estate).

17.      In *Marshall*, for example, the U.S. Bankruptcy Court for the Southern District of Illinois held that the lessees' prepaid rent amounts were not earned by the lessor until the month they were to be applied and that the lessor held those amounts "as bailee or trustee."

---

that Defendants were only to apply Prepaid Rent to the Debtors' rent obligations "as and when due." *See infra* Part IV.C.1.a.

*Marshall*, 240 B.R. at 304.  The court further held that, accordingly, the prepaid rent amounts remained property of the lessees' bankruptcy estate and were subject to turnover. *Id.* at 303–05. The court explained that "[the lessor's] obligation regarding the [amounts] at issue . . . is not to pay a debt owing to the debtors but to refund or 'give back' property belong to the debtors— property that is in [the lessor's] possession but to which no rights has accrued." *Id.* at 305.  And, in *Orangebrook*, the U.S. Bankruptcy Court for the Southern District of Florida held that a tenant's prepaid rent paid prior to a bankruptcy filing was property of the tenant's bankruptcy estate "to be administered by the Trustee for the benefit of all creditors" and was, therefore, subject to turnover. *In re Orangebrook Concessions*, 47 B.R. at 859.[5]  Defendants can point to no meaningful distinction between these cases and the circumstances here.  *See* Motion ¶¶ 27 n.7, 30 n.8. Accordingly, they must turn over the Unused Prepaid Rent Amounts to the Debtors so that those amounts can be used to satisfy the Debtors' obligations under the Bankruptcy Code and the Plan.

18.     By holding the Unused Prepaid Rent Amounts, Defendants are attempting to make an end run around the priority scheme set forth in the Bankruptcy Code to the detriment of other creditors.  One of the central goals of the federal bankruptcy scheme is ensuring equitable distribution for creditors.  *See Windstream Holdings, Inc. v. Charter Commc'ns Inc. (In re Windstream Holdings, Inc.)*, No. 19-22312 (RDD), 2021 Bankr. LEXIS 926, at *12 (Bankr. S.D.N.Y. Apr. 8, 2021) (Drain, J.) (noting that "section 362(a)(3) of the Bankruptcy Code was enacted, with 11 U.S.C. §§ 542 and 543, to ensure that a trustee or debtor in possession maintains

---

[5] Defendants argue that the holding in *Mission Product* shows that the ruling in *Orangebrook* is incorrect. Motion at 21 n.8.  Neither the holding of *Mission Product* nor the general assertions of law within the case contradict or undermine the Debtors' argument.  *See Mission Prod. Holdings v. Tempnology, LLC*, 139 S. Ct. 1652, 1666 (2019) ("[U]nder Section 365, a debtor's rejection of an executory contract in bankruptcy has the same effect as a breach outside bankruptcy.  Such an act cannot rescind rights that the contract previously granted.").  The Leases do not grant Defendants the right to retain the Unused Prepaid Rent Amounts.  *See* Compl. Ex. 1 (Hanover Lease); Compl. Ex. 2 (Imeson Park Lease).

control of the estate's property and to protect against its 'dismemberment' in furtherance of an eventual equitable distribution to creditors"). Here, by improperly refusing to return the Unused Prepaid Rent Amounts, Defendants are attempting to frustrate the federal priority schemes, unfairly prejudicing other creditors by elevating their own unsecured pre-petition rejection damage claims. *See Consolidated Reply of Debtors and Debtors in Possession*, *In re Chrysler LLC*, 09-50002, 2009 U.S. Bank. Ct. Motions LEXIS 1368, *53 (June 1, 2009) (arguing that "not only must a state law accommodate a debtor's fundamental right of rejection under federal law, but through preemption a state law must not be read to countermand section 365(g) of the Bankruptcy Code by elevating a pre-petition rejection damages claim into an administrative priority claim. Such claim priority issues are the exclusive province of federal bankruptcy law."); *see also Motion Granted*, *In re Chrysler LLC*, 09-50002, Doc. 4145 (Bankr. S.D.N.Y. June 19, 2009). Therefore, in the interest of justice and fairness, this Court should compel turnover.

### C.    The Arguments Set Forth In Defendants' Motion to Dismiss Are Meritless.

19.    In their Motion, Defendants heavily rely upon the principle that state law determines the nature and extent of a debtor's interest in property and argue that, here, both Florida and Pennsylvania law provide that (1) landlords are entitled to retain prepaid rent in the event of a tenant's default and (2) prepaid rent is "earned" upon receipt by a landlord. This argument fails, however, on multiple grounds. As an initial matter, because both Florida and Pennsylvania permit parties to "contract around" state law, the terms of the Leases govern the status of the Prepaid Rent, and the unambiguous language of the Leases makes clear that Defendants did not "earn" the Prepaid Rent until the moment the rent was to be applied to the Debtors' fixed rent obligations. With respect to the Unused Prepaid Rent Amounts, that moment never arrived. Accordingly, the Unused Prepaid Rent Amounts belong to the Debtors, and Defendants must turn those amounts over. In any event, Defendants have misstated the substance and significance of Florida and

Pennsylvania law: neither provides that prepaid rent is "earned" upon receipt by a landlord, as Defendants contend.

20. Defendants also are not entitled to set off their claims against the Unused Prepaid Rent Amounts because such amounts are not a "debt" for purposes of a mutuality analysis and, even if they were, mutuality does not exist between the Debtors' post-petition turnover claim for return of the Unused Prepaid Rent Amounts and Defendants' pre-petition unsecured claims for rejection damages.

1. **The Unused Prepaid Rent Amounts Remained Property of the Estates Because, under the Leases, Prepaid Rent Was Only Earned by Defendants "As and When Due" and the Unused Prepaid Rent Amounts Never Became Due.**

   a. **Debtors Are Entitled to A Return of the Prepaid Rent Under the Leases.**

23. Under the terms of the Leases, Defendants' right to apply the Unused Prepaid Rent Amounts never accrued. *See In re Orangebrook Concessions*, 47 B.R. at 859–60 (granting the trustee's turnover action and ordering the claimant landlord to return the unearned prepaid rent). The Leases explicitly provide that Defendants did not earn Prepaid Rent (to be paid from the Unused Prepaid Rent Amounts) until "due." Compl. Ex. 1 (Hanover Lease) § 36; Compl. Ex. 2 (Imeson Park Lease) § 36 ("Landlord shall apply the Prepaid Rent to Sears' obligation to pay Monthly Fixed rent *as and when due*") (emphasis added). Defendants held the Prepaid Rent in what amounted to a trust[6] or bailment until earned. *See, e.g.*, *In re Loeb Estate*, 400 Pa. 368, 369 (Pa. 1960) (providing that payments should be paid "as and when due" from the amounts

---

[6] Both Pennsylvania and Florida law recognize the imposition of a constructive trust when equity so demands. *See Finkelstein v. Se. Bank, N.A.*, 490 So.2d 976, 984 (Fla. 4th Dist. Ct. App. 1986) ("Constructive trust is imposed by operation of law as an equitable remedy in a situation where there is a wrongful taking of the property of another."); *Partrick & Wilkins Co. v. Reliance Ins. Co.*, 500 Pa. 399, 404 (Pa. 1983) ("A constructive trust is . . . simply an equitable remedy designed to prevent unjust enrichment.").

transferred in a residuary trust); BLACK'S LAW DICTIONARY (11th ed. 2019) (defining "bailment" as the "delivery of personal property by one person (the bailor) to another (the bailee) who holds the property for a certain purpose, [] under an express or implied-in-fact contract[;]" "[u]nlike a sale or gift of personal property, a bailment involves a change in possession but not in title"). According to the Leases, the Debtors paid Defendants the Prepaid Rent, which was then held until it was to be applied to the Debtors' obligation thereunder.  Compl. Ex. 1 (Hanover Lease) § 36; Compl. Ex. 2 (Imeson Park Lease) § 36.  And only at the point where the remaining Unused Prepaid Rent Amounts were to be applied to the Debtors' obligations under the Leases did the title to that portion of the Unused Prepaid Rent Amounts pass from one owner to another—"as and when due."

24.     Under well-settled bankruptcy law, the Debtors' rejection of the Leases both (i) constituted a breach of the Leases as of the day before the Commencement Date (*see In re Enron Corp.*, No. 01 B 16034 (AJG), 2005 Bankr. LEXIS 3475, at *9 (Bankr. S.D.N.Y. Sept. 26, 2005)); and (ii) terminated the Debtors' obligation under section 365(d)(3) of the Bankruptcy Code to pay the Monthly Fixed Rent from that point forward.[7]  Accordingly, pursuant to the Leases, the Unused Prepaid Rent Amounts never became "due" and title to those amounts remained with the Debtors.

25.     In addition, as noted above, *see supra* ¶ 10, under the Leases, Sears was deemed to have delivered a termination of the Leases as of the date of Sears' default and the Leases

---

[7] It is clear that rejection of the Leases terminated the Debtors' future obligation to pay the Monthly Fixed Rent as an administrative expense.  *Mission Prod.*, 139 S. Ct. at 1660 (citation omitted) (explaining that the purpose of rejection is to "release the debtor's estate from burdensome obligations"); *In re Avianca Holdings S.A.*, 618 B.R. 684, 697 (Bankr. S.D.N.Y. 2020) ("Through rejection, the debtor can escape all of its future contract obligations."); 3 Collier on Bankruptcy ¶ 365.03 (16th ed. 2021) (citing Treister, et al., *Fundamentals of Bankruptcy Law*, § 5.04(f), at 249 (7th ed. 2004, Richard Levin ed.)) ("Rejection relieves the estate of the debtor's remaining obligations under the contract.").  Contrary to Defendants' assertions, rejection terminated the Debtors' obligations under the Leases.

explicitly provide that Defendants are to refund any unused amounts of the Monthly Fixed Rent upon Termination.  Compl. Ex. 1 (Hanover Lease) § 4(e); Compl. Ex. 2 (Imeson Park Lease) § 4(e).  The Unused Prepaid Rent Amounts are unused Monthly Fixed Rent.  Compl. Ex. 1 (Hanover Lease) § 36 (defining the Prepaid Rent as "twelve (12) months of Monthly Fixed Rent"); Compl. Ex. 2 (Imeson Park Lease) § 36 (same).   Accordingly, the same refund obligation applies and the Debtors are entitled to turnover of the Unused Prepaid Rent Amounts.

26.    Defendants incorrectly argue that, because Defendants were not in default, the Debtors have no right to a refund of the Unused Prepaid Rent Amounts.  Motion ¶ 24.  That is not what the Leases say.  The Debtors acknowledge that the Leases do provide an automatic refund if Defendants are in default.  Compl. Ex. 1 (Hanover Lease) § 36 ("If this Lease is terminated due to a Landlord default . . . then Landlord shall promptly return the unapplied portion of the Prepaid Rent to Sears"); Compl. Ex. 2 (Imeson Park Lease) § 36 (same).  But that language does not preclude other situations in which the Debtors may recover the Unused Prepaid Rent Amounts.  Indeed, nowhere do the Leases provide that Defendants have the right to simply retain the remaining Unused Prepaid Rent Amounts if the agreement is prematurely terminated (as it was here).  Rather, Defendants' remedies provide only that, in the event of a Debtor default, Defendants "may recover," which suggests that Defendants would have to seek to recover damages (i.e., after returning any Unused Prepaid Rent Amounts).  Compl. Ex. 1 (Hanover Lease) § 10(a)(iii); Compl. Ex. 2 (Imeson Park Lease) § 10(a)(iii).  Defendants have no right under the contract to unilaterally hold the Unused Prepaid Rent Amounts.  Rather, they must turn over the Unused Prepaid Rent Amounts and then seek damages through the claims administration and distribution process like all of the other landlords who have claims stemming from rejected leases.

       **b.**     **State Law Does Not Provide That the Unused Prepaid Rent Amounts Were Earned Upon Receipt by Defendants; Further, The Parties Contracted Around State Law.**

27.     The Hanover Lease and the Imeson Park Lease are governed by Pennsylvania and Florida law, respectively. Again, Defendants rely heavily upon state law for their argument that they may retain the Unused Prepaid Rent Amounts. But state law is not determinative here, both because the Parties contracted around state law and because issues of setoff and recoupment are governed by the Bankruptcy Code. And, in any event and contrary to Defendants' assertion, the Florida and Pennsylvania cases that Defendants cite do not stand for the proposition that landlords "earn" prepaid rent upon receipt. Nothing in those cases undermines the Debtors' argument that the Debtors retained title to the Prepaid Rent up to and until the moment that the rent became due and was applied to the Debtors' monthly fixed rent obligations.

28.     Under Florida law, the parties to an agreement may contract around state law governing the treatment of prepaid rent. *See, e.g.*, *Housholder v. Black*, 62 So.2d 50 (Fl. 1953) (stating that parties can contract around Florida state law, which provides that landlords may retain prepaid rent upon tenant's default). And, although there appears to be no Pennsylvania case specifically addressing the issue of whether parties may contract around the state's treatment of prepaid rent, the general principle of allowing parties to contract around state law can be found in Pennsylvania cases as well. *See, e.g.*, *Deal v. Children's Hosp. of Phila.*, 223 A.3d 705, 712 (Pa. Super. Ct. 2019) (noting that parties may, by contract, change the default common law assumption that would otherwise apply to the status of employees); *Gustine Uniontown Assocs., Ltd. ex rel. Gustine Uniontown, Inc. v. Anthony Crane Rental, Inc.*, 892 A.2d 830, 837 (Pa. Super. Ct. 2006) (holding that Pennsylvania law permits parties to contract around the state's "discovery rule," which operates under certain circumstances to toll the statute of limitations during a plaintiff's

injury).  As noted above, that is exactly what the Parties did here.  The Leases provide that
Defendants earned the Prepaid Rent only "as and when due."  Compl. Ex. 1 (Hanover Lease) § 36;
Compl. Ex. 2 (Imeson Park Lease) § 36.  Because the Debtors rejected the Leases, their obligation
to pay Monthly Fixed Rent was terminated and, thus, the Unused Prepaid Rent Amounts never
became due and title to such amounts never passed to Defendants.  *See supra* Part IV.C.1.a.

29.    Further, contrary to Defendants' repeated assertions, although Florida state
law provides that, in the absence of a lease provision to the contrary, landlords may retain prepaid
rent upon a tenant's default, not a single case cited by Defendants states that, under Florida law,
prepaid rent is earned upon receipt by the landlord.  *See* Motion ¶¶ 2, 17–18, 20, 22, 26; *see, e.g.*,
*Zaconick v. McKee*, 310 F.2d 12 (5th Cir. 1962) (applying Florida law); *First D.M.V., Inc. v.
Amster*, 545 So. 2d 936 (Fla. 3d Dist. Ct. App. 1989); *Paul v. Kanter*, 172 So. 2d 26 (Fla. 1965);
*Housholder*, 62 So.2d 50; *Casino Amusement Co. v. Ocean Beach Amusement Co.*, 101 Fla. 59
(Fla. 1931).  The only case to which Defendants cite that states prepaid rent is earned upon receipt
is *Maryland Nat'l Bank v. United States*, 227 F. Supp. 504 (D. Md. 1964), which is a federal case
applying Maryland law and is irrelevant here.  Defendants cite several other inapplicable state
cases and federal cases applying various state laws that likewise have no bearing here.  *See* Motion
¶¶ 17, 21.

30.    Defendants also overstate the holdings of Pennsylvania law.  Specifically,
Defendants assert that "[t]here is little doubt as to how a Pennsylvania court would rule on the
issue."  Motion ¶ 19.  However, Defendants cite no case that directly addresses the question of
whether, under Pennsylvania law, a landlord may retain prepaid rent upon a tenant's default (and
the Debtors have not found such a case in the course of their research).  While Defendants
subsequently concede that "there are few Pennsylvania decisions that address a landlord's interest

in prepaid rent," *id.* ¶ 20, even those few cases are factually distinguishable from the circumstances here. *See, e.g.*, *Luria v. Robbins*, 223 Pa. Super. 456, 465 (1973) (in a sale of real property finding that the parties had entered into a contract and the down payment was not refundable); *Chauvenet v. Person*, 217 Pa. 464 (Pa. 1907) (analyzing prepaid amounts in the context of mining contracts where standards specific to the industry influenced the outcome).  Accordingly, Pennsylvania law does not support dismissal here, where the contractual obligations are clear under the Leases and therefore control.

31.    Not surprisingly, many of the cases upon which Defendants rely, unlike the Leases at issue here, concern agreements that treat retention of prepaid rent as special damages and explicitly provide for the retention of prepaid rent by the landlord upon a tenant's default. *See, e.g.*, *In re Riviera Club, Inc.*, 280 F. Supp. 741, 744, 746 (W.D. Mo. 1967) (noting that the contract states that the prepaid six months' rent "shall be retained by Lessor in any and all events"); *Burns Trading Co. v. Welborn*, 81 F.2d 691, 693 (10th Cir. 1936) (noting that the contract provided "said deposit of $17,000.00 shall be retained by the Lessor as liquidated damages, and Lessee shall have no further right to the same"); *Loew v. Antonick*, 82 Ariz. 204, 206 (Ariz. 1956) (noting that the lease provided that in the event of default "all rentals paid in advance shall be forfeited as liquidated damages"); *Young v. Cobbs*, 83 So. 2d 417, 419–20 (Fla. 1955) (noting that the contract stated, "the security deposit 'shall immediately be and become the unconditional property of the Lessor [defendant], not as a penalty, but as liquidated and agreed upon damages'").  Here, in addition to the provisions discussed *supra* in Part IV.C.1.a that make clear the Unused Prepaid Rent Amounts were not earned upon receipt, the Leases explicitly state that "[u]pon any default by Sears under this lease . . . in no event shall Sears be liable for any consequential, special, punitive or other similar damages."  Compl. Ex. 1 (Hanover Lease) § 10(a)(iii); Compl. Ex. 2

(Imeson Park Lease) § 10(a)(iii).  It is clear from the Leases that Defendants are not entitled to retain the Unused Prepaid Rent Amounts—as special damages or otherwise.

32.     Under the terms of the Leases, Defendants did not earn the Unused Prepaid Rent Amounts at the time of the initial transfer; title to the unused Prepaid Rent remained with the Debtors.  Accordingly, the Court should grant the Debtors turnover of the Unused Prepaid Rent Amounts.

**2.     Defendants Are Not Entitled to Setoff Here Where the Debts Are Not Mutual.**

33.     Defendants incorrectly argue that setoff and recoupment would bar turnover.  When setoff is invoked by a creditor, courts require "mutuality" between a debtor and creditor.  *See, e.g.*, *Marshall*, 240 B.R. at 304 (noting that when "[t]here is no mutuality, [there is] no right to setoff").  "The requirement of 'mutuality' means that the creditor owes a debt to the debtor who likewise is indebted to the creditor.  In addition, for a debt and a claim to be 'mutual,' they must be owed in the same right and between the same parties standing in the same capacity." *Id.*  Defendants do not, and cannot, assert mutuality here.

34.     As an initial matter, the Unused Prepaid Rent Amounts are not a "debt" owed to the Debtors for purposes of the Court's mutuality analysis, but rather are property of the Debtors that is being held by Defendants.  *Id.* (explaining that setoff does not apply after granting turnover because "the property is 'owned' by the bankruptcy estate" and thus, not a debt that can be setoff); *see also Scherling v. Hellman Elec. Corp. (In re Westchester Structures)*, 181 B.R. 730, 740–42 (Bankr. S.D.N.Y. 1995) (discussing that setoff is not applicable where funds are held in trust and are not a debt owed).  Funds are not categorized as a debt when the party is holding property owned by the estate, because the estate cannot be owed its own property.  *See Shugrue v. Fischer (In re Ionosphere Clubs, Inc.)*, 164 B.R. 839, 841 (Bankr. S.D.N.Y. 1994) (explaining that

an amount cannot be categorized as a "debt" when the property "belongs to the Debtors and thus is property of the estate").

35.    Even assuming the Unused Prepaid Rent Amounts were considered a "debt" (they are not), Defendants' own briefing acknowledges that setoff does not apply between pre-petition and post-petition claims, as mutuality is required. *See* Motion ¶ 30 n.8. Here, mutuality cannot exist for that reason. Defendants' claim for rejection damages is a pre-petition claim, *see* 11 U.S.C. § 502(b)(6), but the Debtors' turnover claim for the Unused Prepaid Rent Amounts only arose post-petition when the Debtors rejected the Leases, *see In re Orangebrook Concessions, Inc.*, 47 B.R. at 860 (holding that mutuality did not exist between a tenant's prepaid rent and a landlord's pre-petition unsecured damage claim).

36.    Defendants may be able to set off their post-petition administrative claims against the Unused Prepaid Rent Amounts, but to do so, they first must concede that the Unused Prepaid Rent Amounts are post-petition amounts they owe the Debtors. *See, e.g.*, 5 Collier on Bankruptcy ¶ 553.03 (16th ed. 2021) ("The fourth basic requirement of section 553(a) is that the relevant claim and debt must each constitute a valid obligation."). In any event, because Defendants' post-petition claims are relatively small—$75,560.49 for Hanover and $68,497.91for Imeson Park—they do not bar the Debtors from seeking turnover of more than $3.1 million of Unused Prepaid Rent Amounts.

## V.    **<u>CONCLUSION</u>**

For all of the foregoing reasons, the Debtors respectfully request that the Court enter an

order under 11 U.S.C. § 542(a) of the Bankruptcy Code:

   i.    Compelling the Hanover Landlord to turn over $1,887,505.50, representing
         the Unused Prepaid Rent Amounts it holds;

   ii.   Compelling the Imeson Park Landlord to turn over $1,210,528.50,
         representing the Unused Prepaid Rent Amounts it holds; and

   iii.  Granting the Debtors such other and further relief, at law or in equity, to
         which they are entitled.

Dated: April 30, 2021
       New York, New York

*/s/ Jacqueline Marcus*
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York  10153
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007
Jacqueline Marcus
Jared R. Friedmann
Jennifer Brooks Crozier

*Attorneys for Debtors*
*and Debtors in Possession*